Filed 2/1/16  P. v. Ayala CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE, | B262361 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA020914) |
| v. | |
| SERGIO LOPEZ AYALA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Reversed and remanded with directions.

California Appellate Project, Jonathan B. Steiner and Richard B. Lennon under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle, Noah P. Hill and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

Sergio Lopez Ayala appeals from the trial court order denying his petition for resentencing under the Three Strikes Reform Act of 2012 (hereafter, Proposition 36 or the Act). The Act amended Penal Code[1] sections 667 and 1170.12 (the Three Strikes law) to reduce the punishment for some third-strike offenses that are neither serious nor violent. The Act also added section 1170.126 to create a procedure by which some inmates already serving third-strike sentences may seek resentencing in accordance with the new sentencing rules.

Ayala is serving an indeterminate sentence under the Three Strikes law, having been found guilty in a jury trial of possessing cocaine base for sale (Health & Saf. Code, § 11351.5). The same jury acquitted him of possession of a deadly weapon (former § 12020, subd. (a)(1)).

Ayala subsequently petitioned for a reduction of his sentence pursuant to Proposition 36, arguing that in light of his acquittal he was eligible for resentencing because he had not committed the disqualifying conduct of being armed with a deadly weapon during the commission of his "current offense."[2] (See §§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) The trial court denied Ayala's petition, finding him ineligible for resentencing under section 1170.126. Using a preponderance of the evidence standard of proof, the court concluded that Ayala had been armed with a deadly weapon when he committed his drug offense.

Ayala appeals, claiming that the trial court erred because it found him ineligible based on an improper reconsideration of the jury verdict. We agree, and we reverse the trial court's order and remand for further proceedings. Under a properly applied "beyond a reasonable doubt" standard, Ayala's acquittal on the weapon possession charge is

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

[2]     "Although the statute refers to it as the 'current' conviction because it is the conviction for which the petitioner is seeking to be resentenced, the underlying case has been fully litigated. The trial has been held or a plea has been taken, and the defendant is serving his or her sentence." (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1337 (*Bradford*).)

2

preclusive of a determination that he is ineligible for resentencing consideration. As a matter of law, therefore, Ayala is eligible for resentencing. What remains to be adjudicated, however, is whether, under a preponderance of the evidence standard,**3** he should be resentenced or whether he would pose an unreasonable risk of danger to public safety such that he should not be resentenced.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 9, 1994, a police officer made a traffic stop on a car driven by Ayala. When Ayala stepped out of his car, the officer noticed a 26-inch aluminum baseball bat between the driver's seat and the doorjamb of the car. Asked why he had the bat in his car, Ayala said he had been robbed before "so he was carrying [the bat] to make sure that it didn't happen again." The officer searched the car and found a bag containing approximately 10 grams of cocaine base. When Ayala was subsequently questioned by another officer about the baseball bat, he admitted "that he carried it for his protection because everybody knows that he has large sums of cash on him and then [he] related an incident that occurred while he was in MacArthur Park in which some would-be robbers

---

**3** In *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279 (*Kaulick*), we explained that "[t]here are not two, but three, determinations at issue under Penal Code section 1170.126, subdivision (f): First, the court must determine whether the prisoner is eligible for resentencing; second, the court must determine whether resentencing would pose an unreasonable risk of danger to public safety; and third, if the prisoner is eligible and resentencing would *not* pose an unreasonable risk of danger, the court must actually resentence the prisoner." (*Id*. at p. 1299.) We then held that, at the second stage, the People bear the burden of establishing dangerousness by a preponderance of the evidence. (*Id*. at pp. 1301-1305.) We reached this conclusion, and rejected Kaulick's argument the proper standard was beyond a reasonable doubt, for the following reasons: no Sixth Amendment issues were implicated; preponderance of the evidence is the general statutory standard (Evid. Code, § 115); no greater burden of proof was necessary because the dangerousness hearing is not a summary proceeding and "it is the general rule in California that once a defendant is eligible for an increased penalty, the trial court, in exercising its discretion to impose that penalty, may rely on factors established by a preponderance of the evidence." (*Kaulick*, at p. 1305.) In contrast to the discretionary determination that a defendant is or is not a risk to public safety, the issue in the present appeal concerns the legal determination of Ayala's eligibility to be considered for resentencing, in light of the jury verdict at his trial.

3

had approached him and were going to take his money from him and his bat was used to protect himself and his money."

The jury convicted Ayala of possessing cocaine base for sale (Health & Saf. Code, § 11351.5), but found him not guilty on the charge of possessing a deadly weapon, to wit, a billy club (former § 12020, subd. (a)).[4] The trial court found that Ayala had suffered three prior "strikes" under the Three Strikes law and sentenced him to prison for a term of 25 years to life. We affirmed Ayala's conviction and sentence. (See *People v. Ayala* (Oct. 17, 1996, B094877) [nonpub. opn.].)

On November 6, 2012, California voters approved Proposition 36, which amended the Three Strikes law to reduce punishment for certain offenses. In January 2013, Ayala petitioned the court for recall of his sentence and resentencing pursuant to section 1170.126. The trial court found the petition stated a prima facie basis for resentencing and issued an order to show cause. The District Attorney opposed resentencing and argued Ayala was ineligible for resentencing because his possession of the baseball bat showed that he was armed with a deadly weapon during the commission of his "current offense."[5] Based on its review of the trial evidence, the court concluded: "[T]he People have shown that [Ayala] was armed with a deadly weapon within the meaning of Penal Code sections [667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)], and [he] is therefore ineligible for recall and resentencing." Ayala timely appealed.

---

[4]     Section 12020 has been renumbered as section 22210. The Deadly Weapons Recodification Act of 2010 repealed and recodified former sections 12000 to 12809 without substantive change. (§§ 16000, 16005, 16010.) Former section 12020, subdivision (a) was recodified without substantive change at section 22210, operative January 1, 2012. (Stats. 2010, ch. 711, (Sen. Bill No. 1080) § 4 [repealed]; Stats. 2010, ch. 711, (Sen. Bill No. 1080) § 6 [reenacted].)

[5]     The District Attorney also argued that Ayala would pose an unreasonable risk of danger to public safety; however, that issue was not reached by the trial court and is not before us on appeal.

Ayala contends the trial court erred in concluding he was ineligible for resentencing based on facts not established by his underlying conviction.

**DISCUSSION**

1. *The Act*.

In the California Supreme Court's recent opinion in *People v. Johnson* (2015) 61 Cal.4th 674 (*Johnson*)) addressing the Act, the court summarized the Act's purpose and provisions as follows:

"Prior to its amendment by the Act, the Three Strikes law required that a defendant who had two or more prior convictions of violent or serious felonies receive a third strike sentence of a minimum of 25 years to life for any current felony conviction, even if the current offense was neither serious nor violent. (Former §§ 667, subds. (d), (e)(2)(A), 1170.12, subds. (b), (c)(2)(A).)[6]  The [prospective portions of the] Act[7] amended the Three Strikes law with respect to defendants whose current conviction is for a felony that is neither serious nor violent. In that circumstance, unless an exception applies, the defendant is to receive a second strike sentence of twice the term otherwise provided for the current felony, pursuant to the provisions that apply when a defendant has one prior conviction for a serious or violent felony. (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C); see §§ 667.5, subd. (c) [list of violent felonies], 1192.7 [list of serious felonies], 1192.8 [additional serious felonies for purposes of § 1192.7].)

"The Act's exceptions to the new sentencing provisions relate to a defendant's current offense and prior offenses. If the current offense involves controlled substances and specified findings are made concerning the quantity of controlled substances

---

[6]  "The Three Strikes law was enacted twice in 1994, first by the Legislature (§ 667, subds. (b)-(i); Stats. 1994, ch. 12, § 1, p. 71), and thereafter by the voters by way of Proposition 184 (§ 1170.12; [citation])."

[7]  The prospective provisions of the Act (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C)) apply to individuals whose "current" offense is committed after the effective date of the Act.

involved, or if the current offense is among specified sex offenses, a defendant with two or more strikes must be sentenced to a term of at least 25 years to life. [Fn. omitted.] (§§ 667, subd. (e)(2)(C)(i)-(ii), 1170.12, subd. (c)(2)(C)(i)-(ii).) A third strike sentence is also required if, '[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.' (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) Finally, a defendant will be excluded from the new sentencing provisions if he or she suffered a prior conviction for . . . [certain offenses listed in § 667, subd. (e)(2)(C)(iv) and § 1170.12, subd. (c)(2)(C)(iv) which are sometimes referred to as] 'super strikes.' [Citation, fn. omitted.]

"In addition to reducing the sentence to be imposed for some third strike felonies that are neither violent nor serious, the Act provides a procedure by which some prisoners already serving third strike sentences may seek resentencing in accordance with the new sentencing rules. (§ 1170.126.) 'An inmate is eligible for resentencing if . . . [¶] . . . [t]he inmate is serving an indeterminate term of life imprisonment imposed pursuant to [the Three Strikes law] for a conviction of a felony or felonies that are not defined as serious and/or violent . . . .' (§ 1170.126, subd. (e)(1).) Like a defendant who is being sentenced under the new provisions, an inmate is disqualified from resentencing if any of the exceptions set forth in section 667, subdivision (e)(2)(C) and section 1170.12, subdivision (c)(2)(C) are present. (§ 1170.126, subd. (e).) In contrast to the rules that apply to sentencing, however, the rules governing resentencing provide that an inmate will be denied recall of his or her sentence if 'the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.126, subd. (f).)" (*Johnson*, *supra*, 61 Cal.4th at pp. 680-682.)

As explained by *People v. Blakely* (2014) 225 Cal.App.4th 1042 (*Blakely*): "In enacting section 1170.126 as part of Proposition 36, the issue before the voters was not whether a defendant could or should be punished more harshly for a particular aspect of his or her offense, but whether, having already been found to warrant an indeterminate life sentence as a third strike offender, he or she should now be eligible for a lesser term.

By including as a disqualifying factor an inmate's mere intent, during commission of the current offense, to cause great bodily injury to another person, the electorate signaled its own intent that disqualifying conduct not be limited to what is specifically proven or punishable in the form of an offense or enhancement. . . . [Citation. ] [V]oters rendered ineligible for resentencing not only narrowly drawn categories of third strike offenders who committed particular, specified offenses or types of offenses, but also broadly inclusive categories of offenders who, during commission of their crimes – and regardless of those crimes' basic statutory elements – used a firearm, were armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (*Id*. at pp. 1054-1055.)

*Blakely* went on to explain that "[i]t is clear the electorate's intent was not to throw open the prison doors for *all* third strike offenders whose current convictions were not for serious or violent felonies, but only for those who were perceived as nondangerous or posing little or no risk to the public. A felon who has been convicted of two or more serious and/or violent felonies in the past, and most recently had a firearm readily available for use, simply does not pose little or no risk to the public." (*Blakely*, *supra*, 225 Cal.App.4th at p. 1057.) "[I]n order to effectuate the electorate's intent to leave subject to indeterminate life sentences those inmates perceived as posing a risk to public safety, section 1170.126, subdivision (e)(2) must be read as disqualifying from resentencing an inmate whose current sentence was imposed for an offense during the commission of which – whether through a formal element of the offense or enhancement, or mere conduct or other means – he or she used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person, regardless of whether such a factor was pled and proved." (*Id*. at p. 1059.)

2. *The trial court's ruling that Ayala was ineligible for resentencing.*

Former section 12020, subdivision (a)(1), prohibited, in pertinent part, the possession of "any instrument or weapon of the kind commonly known as a . . . billy." The statute was intended to prohibit not only objects specifically designed as weapons, but also everyday objects that could be used as weapons. "[W]e have long recognized

7

that section 12020 was enacted not only 'to outlaw the classic instruments of violence and their homemade equivalents,' but also 'to outlaw possession of the sometimes-useful object when the attendant circumstances, including the time, place, destination of the possessor, the alteration of the object from standard form, and other relevant facts indicated that the possessor would use the object for a dangerous, not harmless, purpose.' [Citation.]" (*In re David V.* (2010) 48 Cal.4th 23, 28.)

One of the weapons prohibited by former section 12020 was a billy club. "[A]n item commonly used for a nonviolent purpose, such as a baseball bat or a table leg, could qualify as a billy, but only 'when the attendant circumstances . . . indicated that the possessor would use the object for a dangerous, not harmless, purpose.' [Citation.]" (*People v. King* (2006) 38 Cal.4th 617, 624.) "Intent to use a weapon is not an element of the crime of weapon possession. 'Proof of possession alone is sufficient.' [Citation.] However, if the object is not a weapon per se, but an instrument with ordinary innocent uses, the prosecution must prove that the object was possessed *as a weapon*. The only way to meet that burden is by evidence 'indicat[ing] that the possessor *would use* the object for a dangerous, not harmless, purpose.' [Citation.] The evidence may be circumstantial, and may be rebutted by the defendant with evidence of 'innocent usage.' [Citation.] The prosecution may not, however, merely show that the defendant had a table leg in his car while driving through a dangerous neighborhood, and require him to prove that he did not carry it as a weapon. Such a rule would turn the presumption of innocence on its head. Intended use is not an element of weapon possession, but the prosecution always bears the burden of proving that the defendant possessed a weapon." (*People v. Fannin* (2001) 91 Cal.App.4th 1399, 1404.)

The trial court here, applying a preponderance of the evidence standard of proof, determined that there was sufficient evidence to prove Ayala had been carrying the baseball bat in his car in order to use it as a weapon. Particularly taking note of what Ayala said to the police about the bat, the court concluded: "These statements readily show the Petitioner's intent and purpose in carrying the baseball bat in the vehicle for defensive or offensive use as a dangerous or deadly weapon." Citing our Supreme

8

Court's acknowledgment in *In re Coley* (2012) 55 Cal.4th 524, 554, that "a jury verdict acquitting a defendant of a charged offense does *not* constitute a finding that the defendant is factually innocent of the offense or establish that any or all of the specific elements of the offense are not true," the Attorney General argues that the trial court properly found Ayala ineligible for Proposition 36 resentencing because "in opposing a sentence recall petition, the prosecution merely needs to make a showing under the lowest burden of proof, which is by a preponderance of the evidence." As we will explain below, we disagree with this analysis.

     3. *The trial court erred in finding Ayala ineligible for resentencing.*

     Section 1170.126, subdivision (f), provides: "Upon receiving a petition for recall of sentence under this section, the court shall determine whether the petitioner satisfies the criteria in subdivision (e) [i.e., the eligibility factors deriving from the nature of the defendant's current and prior convictions]. If the petitioner satisfies the criteria in subdivision (e), the petitioner shall be resentenced . . . [in the same manner as a second strike offender] unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." The statute does not say anything more about what procedures the trial court should follow in making this determination.

     Ayala and the Attorney General agree that, in order to determine whether the "armed with a deadly weapon" eligibility factor (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)) barred Ayala from resentencing consideration, the appropriate procedure was to examine – under *People v. Guerrero* (1988) 44 Cal.3d 343 (*Guerrero*), and its progeny – Ayala's record of conviction to ascertain the conduct underlying his conviction for possessing cocaine base for sale.[8] As *Bradford*, *supra*, 227 Cal.App.4th at p. 1332, explained: "The eligibility criteria here refer to something that occurs '[d]uring the commission of the current offense,' that being 'the defendant used a firearm, was

---

[8]     *Guerrero* established the rule that, in determining the facts underlying prior convictions, "the trier of fact may look to the entire record of the conviction." (*Guerrero*, *supra*, 44 Cal.3d at p. 355.)

armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.' (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) By referring to those facts attendant to commission of the actual offense, the express statutory language requires the trial court to make a factual determination that is not limited by a review of the particular statutory offenses and enhancements of which petitioner was convicted. Not only do the criteria at issue here not describe any particular offenses or enhancements, but the reference to an intent to cause great bodily injury does not clearly equate to the most common related enhancement, that being the infliction of great bodily injury."

The crucial issue here, however, is the proper standard of proof for determining whether the record of conviction demonstrates that Ayala is necessarily disqualified from resentencing consideration under section 1170.126 because he was armed with a deadly weapon when he committed his current offense. The Attorney General asserts that "in opposing a sentence recall petition, the prosecution merely needs to make a showing under the lowest burden of proof, which is by a preponderance of the evidence." Under that analysis, the trial court properly concluded – contrary to the jury's finding – that the evidence demonstrated Ayala intended to use the baseball bat as a weapon. However, Ayala argues that under this approach the trial court "essentially rejected the jury's verdict and made its own contrary findings regarding whether the item was a deadly weapon." As we will explain, we conclude Ayala is correct and that the trial court's denial of his resentencing petition must be reversed.

There are several different approaches available when considering the standard of proof applicable to resentencing eligibility determinations under Proposition 36. In *People v. Osuna* (2014) 225 Cal.App.4th 1020 (*Osuna*), the Court of Appeal noted Evidence Code section 115 ("Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence"), and concluded that the correct standard of proof for these resentencing eligibility determinations was preponderance of the evidence: "Because a determination of eligibility under section 1170.126 does not

10

implicate the Sixth Amendment,[9] a trial court need only find the existence of a disqualifying factor by a preponderance of the evidence. [Citation.]" (*Osuna*, at p. 1040.)

In support of this conclusion, *Osuna* cited our opinion in *Kaulick*, *supra*, 215 Cal.App.4th 1279, which held that the appropriate standard of proof for determining dangerousness under section 1170.126, subdivision (f), is preponderance of the evidence. We reasoned in *Kaulick* that "it is the general rule in California that once a defendant is eligible for an increased penalty, the trial court, in exercising its discretion to impose that penalty, may rely on factors established by a preponderance of the evidence. [Citation.] As dangerousness is such a factor, preponderance of the evidence is the appropriate standard." (*Kaulick*, at p. 1305, fn. omitted.) But while the subdivision (f) dangerousness determination is akin to the usual procedure in which a trial court exercises its discretion to decide whether various sentencing factors warrant a greater or lesser punishment,[10] the subdivision (f) eligibility determination requires the trial court to make a summary legal finding as to whether the defendant is even eligible for resentencing consideration. Moreover, *Osuna* itself acknowledged that using a preponderance of the evidence standard to determine not only dangerousness but also eligibility might "allow a trial court to find arming, so as to disqualify an inmate from

---

[9]     This is a recognition of the principle that the Sixth Amendment right to a jury trial resulting in a "beyond a reasonable doubt" verdict in criminal cases is inapplicable here. "As we said in *People v. Superior Court (Kaulick)*, *supra*, 215 Cal.App.4th at pages 1304-1305: 'The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues.' " (*People v. Manning* (2014) 226 Cal.App.4th 1133, 1141, fn. 3.)

[10]     See section 1170.126, subdivision (g)(3)): "In exercising its discretion in subdivision (f), the court may consider" any evidence "the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."

resencing under the Act, even if an arming enhancement was pled but found not true by a jury." (*Osuna*, *supra*, 225 Cal.App.4th at p. 1038, fn. 6.) That hypothetical situation is almost exactly what happened in the case at bar. As explained below, we conclude this situation requires a heightened standard of proof for making section 1170.126, subdivision (f), eligibility determinations.

In *Bradford*, *supra*, 227 Cal.App.4th 1322, the same standard of proof question was raised, but not ultimately reached: "The People argue the standard should be preponderance of the evidence, while petitioner argues due process compels application of a heightened burden of proof. We conclude the standard of proof is not dispositive in this case [and] . . . . [t]herefore . . . we express no opinion regarding the appropriate standard of proof." (*Id*. at p. 1343.) However, in a concurring opinion in *Bradford*, Presiding Justice Raye presented an in-depth analysis of the conflicting interests that should be considered when deciding upon the proper standard of proof: "I write separately to explore the significant due process concerns involved and to suggest the appropriateness of a heightened burden of proof by clear and convincing evidence." (*Id*. at p. 1344, fn. omitted.) We will summarize Justice Raye's analysis in some detail because we have found it extremely helpful.

Justice Raye noted that "the degree of proof required in a particular proceeding is traditionally left to the courts and . . . the issue implicates due process concerns. [Citation.]" (*Bradford*, *supra*, 227 Cal.App.4th at p. 1346.) "An individual has a constitutional right to procedural due process when the government deprives an individual of a liberty or property interest. [Citation.] One component of procedural due process is the standard of proof used to support the deprivation. [Citation.] The standard of proof must satisfy ' "the constitutional minimum of 'fundamental fairness.' " ' [Citation.] To determine whether a proof standard meets this constitutional minimum, the courts evaluate three factors: (1) the private interest affected by the proceeding; (2) the risk of an erroneous deprivation of the interest created by the state's chosen procedure; and (3) the countervailing governmental interest supporting use of the

12

challenged procedure. [Citations.]" (*People v. Jason K.* (2010) 188 Cal.App.4th 1545, 1556.)

As the Supreme Court explained in *Santosky v. Kramer* (1982) 455 U.S. 745 [102 S.Ct. 1388]: " '[T]he standard of proof is a crucial component of legal process, the primary function of which is "to minimize the risk of erroneous decisions." ' [Citation.] Notice, summons, right to counsel, rules of evidence, and evidentiary hearings are all procedures to place information *before* the factfinder. But only the standard of proof '[instructs] the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions' he draws from that information. [Citation.]" (*Id.* at p. 757, fn. 9.) "When the State brings a criminal action to deny a defendant liberty or life . . . 'the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment.' [Citation.]" (*Id.* at p. 755.)

Applying these due process concerns to the question of eligibility for resentencing under the Act, Justice Raye initially pointed out that the defendant's liberty interest is somewhat diminished because at issue is an ameliorative proceeding initiated by a defendant who is seeking a shorter sentence. "The current case has been fully adjudicated, and petitioner will not suffer any further deprivation of his liberty interest other than that which was a consequence of his initial lawful conviction, at which time the burden of proof was on the prosecution to prove beyond a reasonable doubt that he was guilty. . . . And case law indicates relatively low due process standards may apply to various postconviction proceedings that potentially affect how much time a defendant serves in prison, such as parole proceedings or disciplinary proceedings that result in credit forfeitures. [Citations.]" (*Bradford*, *supra*, 227 Cal.App.4th at p. 1347.)

However, counter-balancing this diminished interest is the substantial amount of future prison time that might be affected by the proceeding: "The difference between an existing sentence and a revised sentence under Proposition 36 is significant. A lengthy, indeterminate sentence that could amount to most of a petitioner's life may be reduced on

resentencing to a relatively short term of years. . . . The liberty interest may be characterized in this context as substantial, although it is not significantly different than that underlying other sentencing decisions." (*Bradford*, *supra*, 227 Cal.App.4th at p. 1347.)

Justice Raye then explained that, given the summary and retrospective nature of this proceeding, "the risk of erroneous deprivation of the interest created by the state's chosen procedure" factor "is the most compelling. . . . [T]he statute does not call on the parties to present evidence concerning relevant facts of a prior conviction that determine whether the petitioner is ineligible for resentencing. It is in this respect that the current matter is not like either an ordinary sentencing proceeding or the discretionary resentencing proceeding under Proposition 36, at which time the trial court considers evidence bearing on the petitioner's dangerousness. The retrospective nature of the determination presents unique pitfalls. A review of the record of the prior conviction is potentially problematic since the parties had no incentive to fully litigate at the time of the original trial court proceedings unpleaded factual allegations that relate to the petitioner's conduct and intent at the time of the crimes. Obviously, the issue of whether a particular petitioner intended to cause great bodily injury under the eligibility criteria could be the subject of substantial dispute between the parties, as it necessarily requires a determination based on circumstantial evidence in virtually all cases. The determination of whether an item is a deadly weapon can likewise be problematic . . . ." (*Bradford*, *supra*, 227 Cal.App.4th at pp. 1347-1348.)

Finally, Justice Raye explained that "the countervailing government interest implicated by the procedure" is slight. (*Bradford*, *supra*, 227 Cal.App.4th at p. 1349.) Whereas a finding of ineligibility is the end of the road for the defendant, the People can still present new evidence at the discretionary resentencing stage in order to show that an otherwise eligible defendant is too dangerous to be released. "The statute expressly contemplates that the trial court will consider additional evidence in determining whether to exercise its discretion to resentence the petitioner. (See § 1170.126, subd. (g).) The opportunity to do so likewise bears on the second factor, that being the risk of an

14

erroneous deprivation of an individual's rights. The risk of an erroneous deprivation of an individual's rights may be minimized in a closer case by imposition of a heightened burden of proof without putting the People in a substantially diminished position, whereas imposition of a preponderance of the evidence standard incorrectly assumes the parties are in a similar position going forward in the proceeding. In this circumstance, the countervailing interests of the People are substantially diminished. [¶] It must also be remembered that the People now bear the burden of proof beyond a reasonable doubt with respect to establishing the ineligibility of defendants awaiting sentencing under the three strikes law, as revised by Proposition 36. Consequently, current defendants are afforded substantial due process rights to both challenge evidence implicating the criteria and to convince a jury that the prosecution has failed to meet its evidentiary burden." (*Bradford*, *supra*, 227 Cal.App.4th at pp. 1349-1350.)

Justice Raye concluded that "[a]n analysis of the factors described above suggests that due process may compel a heightened burden of proof in making the [ineligibility] determination . . . based upon the cold record of petitioner's prior conviction. I would respectfully suggest careful consideration as to whether imposition of proof by clear and convincing evidence is required." (*Bradford*, *supra*, 227 Cal.App.4th at p. 1350.)

We agree with Justice Raye's suggestion that a heightened standard of proof should be required in this situation. We base this conclusion on the substantial amount of prison time potentially at stake for the defendant seeking resentencing, the risk of potential error stemming from the summary and retrospective nature of the adjudication that will be made at this proceeding, and the slight countervailing governmental interest given the People's opportunity to provide new evidence at any subsequent dangerousness hearing.

Contrary to Justice Raye, however, we conclude that the appropriate standard of proof is beyond a reasonable doubt, not clear and convincing evidence. We base our conclusion on *Johnson*, which the Supreme Court issued after *Bradford* was filed. *Johnson* said very clearly: "[T]he parallel structure of the Act's amendments to the sentencing provisions and the Act's resentencing provisions reflects an intent that

15

sentences imposed on individuals with the same criminal history be the same, regardless of whether they are being sentenced or resentenced. Both the sentencing scheme and the resentencing scheme provide for a second strike sentence if the current offense is not a serious or violent felony, and they set forth identical exceptions to the new sentencing rules. (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C), 1170.126, subd. (e)(2), (3).)" (*Johnson*, *supra*, 61 Cal.4th at p. 686.) "[*T*]*he parallel structure of the Act's sentencing and resentencing provisions appears to contemplate identical sentences in connection with identical criminal histories, unless the trial court concludes that resentencing would pose an unreasonable risk to public safety*." (*Id*. at p. 687, italics added.)

The court's analysis in *Johnson* leads us to conclude that, not only must there be a heightened standard of proof for section 1170.126 eligibility determinations, but that – in order to safeguard the intended parallel structure of the entire Act – the heightened standard of proof should be beyond a reasonable doubt. Under a lesser standard of proof, nothing would prevent the trial court from disqualifying a defendant from resentencing consideration by completely revisiting an earlier trial, and turning acquittals and not-true enhancement findings into their opposites. That is what happened here when, in effect, the trial court relied on the difference between the "beyond a reasonable doubt" and "preponderance of the evidence" standards to find Ayala ineligible for resentencing on the basis of a deadly weapon charge that had been pled and disproved at his earlier trial. To allow this result would violate *Johnson*'s "equal outcomes" directive, leaving Ayala ineligible for resentencing while a newly convicted defendant with an identical criminal history would be found eligible for a second-strike prison sentence.

**DISPOSITION**

The postjudgment order denying Ayala's petition is reversed.  The matter is remanded for a hearing to determine whether, under a preponderance of the evidence standard, Ayala would pose an unreasonable risk of danger to public safety such that he should not be resentenced.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


ALDRICH, J.


LAVIN, J.

17